UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

THOMAS P. PATTEN, :
:
    *Plaintiff*, :
v. : No. 1:04-cv-066
: *Edgar*
JOHN E. POTTER, United States :
Postmaster General, :
:
    *Defendant*. :

**MEMORANDUM**

**I.**     **Introduction**

Currently pending before the Court is the motion of defendant, John E. Potter, United States Postmaster General ("Potter") for a summary judgment pursuant to FED. R. CIV. P. 56 on the claims of plaintiff, Thomas P. Patten ("Patten") alleging age and race discrimination in his employment by the United States Postal Service ("USPS") [Doc. No. 11-1]. Patten has filed a response in opposition to Potter's motion for a summary judgment [Doc. No. 15]. Potter has also filed a reply to Patten's response to his motion for a summary judgment [Doc. No. 17-1].

Consequently, Potter's motion for a summary judgment [Doc. No. 11-1] is now ripe for review. For the reasons which follow, Potter's motion for a summary judgment under FED. R. CIV. P. 56 on Patten's claims of age and race discrimination in his employment by the USPS [Doc. No. 11-1] will be **GRANTED**.

**II.**     **Background**

Patten filed his complaint on March 8, 2004 [Doc. No. 1]. At the time of the filing of his complaint Patten, who is a resident of Chattanooga, Tennessee, was 56 years of age and was employed by the USPS at the Shallowford Road postal facility in Chattanooga [Doc. No. 1, ¶¶ 1-4]. Patten is an African-American. *Id.* at ¶ 2.

Patten alleges that from June 1998 through May 2001, he was employed at the Shallowford Road facility for approximately 32 hours per week. *Id.* at ¶ 5. Patten asserts that he has not worked as an acting supervisor since May 2001 and he asserts that he believes he will not be utilized as an acting supervisor at any time in the future. *Id.* Patten further asserts that he was informed that he was not utilized as an acting supervisor because he was not included in the Associate Supervisor Program ("ASP") list. *Id.* at ¶ 6.

According to Patten, he did not sign up for the ASP because no members of his race had been included in the program, *id.* at ¶ 7; and, he alleges that the ASP requirement for the acting supervisor position is a subterfuge to keep members of his race out of the Acting Supervisor position. *Id.* at ¶ 9. Patten asserts that he was not continued in the Acting Supervisor position, in which he had successfully served because of race discrimination. *Id.* at ¶ 10. Finally, Patten asserts that he filed claims concerning the failure to keep him in the acting supervisor position with the Equal Employment Opportunity Commission ("EEOC") and was issued a right to sue letter on December 10, 2003. *Id.* at ¶ 12.

## II. **Potter's Motion for a Summary Judgment**

Potter moves for a summary judgment under FED. R. CIV. P. 56 on the ground that Patten failed to timely exhaust his administrative remedies as required by law [Doc. No. 11-1]. Specifically, according to Potter, the USPS utilized Patten as a temporary supervisor, known as a 204b [Doc. No. 14-1, p. 1]. Potter further asserts that based upon Patten's deposition testimony, Patten discovered that he was no longer being utilized as a 204b when he reported to work one evening and was unable to access the computer that he used to perform his 204b duties. *Id.* at ¶ 2. Further, Potter asserts that Patten admitted that he observed white males serving in the 204b

position by at least the middle of May 2001 when he returned from vacation. *Id.* Nevertheless, Potter contends that Patten did not contract a USPS EEO counsel to report the alleged discrimination until July 16, 2001. *Id.* Thus, Potter asserts that Patten's claim must be dismissed because he failed to timely exhaust his administrative remedies when he waited more than 45 days to report his allegations of discrimination. *Id.* at p. 3.

In his response to Potter's motion for a summary judgment, Patten states:

> Plaintiff agrees with the facts as set forth in Defendant's brief for the purposes of this motion. Plaintiff states that in addition to the facts as set forth by the Defendant that he has been willing and able to serve as a 204b since April 2001 and that this fact was known to Defendant. Plaintiff, however, has not been used as a 204b since that time.

[Doc. No. 15, p. 1]. This, Patten asserts that a genuine issue of material fact exists which precludes the entry of summary judgment in favor of Potter.

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-

moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

**B.     Analysis**

The regulation applicable to EEOC claims by federal sector employees, 29 C.F.R. § 1614.105 states in relevant part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (b) An aggrieved person must initiate contract with a Counsel within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

When it permitted federal employees to bring suit under Title VII, "Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002).

Attached to Potter's motion for a summary judgment is the Information for Pre-Complaint Counseling ("Information") signed by Patten on August 2, 2001 [Doc. No. 11-2]. The Information states that "[o]n July 16, 2001 you requested an appointment with a Dispute Resolution Specialist." *Id.* at p. 1. The subsection of the Information for the description of the incident/activity which prompted Patten to seek EEO counseling states that

4

> On April 27, 2001, after having serve as a 204B from July 23, 1998 until 27 April 2001 I was not placed on mgr. schedule after the above date. The U.S.P.S. has since used 2-w-m in the same capacity as I was serving in. I receive no official word from anyone in management as to why I was demoted and w-m were promoted to level of management, if management continues to use 204B why not African-Americans over 50 years old.

*Id.* The subsection of the Information labeled comparisons identified three individuals for comparison. With regard to the first individual the Information states that "a younger w-m was allowed to 204 B after b-m and b-f was denied the opportunity to work as 204 B." *Id.* at p. 2.[1] With regard to the second individual the Information stated that "w-m . . . was allowed to act as 204 B in mail processing after African-Americans males and females denied." *Id.* With regard to the third individual for comparison, the Information states "w-m allowed to work as 204B African-Americans denied." *Id.* The Information further states that Patten had not filed a grievance with regard to this issue. *Id.* at subsection G.

Portions of Patten's deposition, dated June 8, 2005 are also attached to Potter's motion for a summary judgment [Doc. No. 11-2]. During his deposition Patten was asked if the last time he served as an acting supervisor was April 27, 2001 [Doc. No. 11-2, p. 46]. Patten responded that the date "seems about right" and that the last time he worked as in an ASP position was "sometime in April, first of May, somewhere along in there." *Id.* Further, during his deposition Patten was asked:

> Q. Do you agree that July 16th 2001, which is the date reflected on there that's not in your handwriting, is the date you first requested an appointment with a dispute resolution specialist?

---

[1] In his complaint, Patten has explicitly alleged race discrimination, but has not explicitly alleged age discrimination. Nevertheless, the Information which was filed with the EEO Counselor in August 2001, does state that Patten observed "younger" white males being used in the 204b or acting supervisor position at the Shallowford Road facility after April 27, 2001. Thus, the Court construes Patten's complaint as also implicitly raising an allegation of age discrimination in addition to the explicit allegation of race discrimination.

> A. I would say that's pretty accurate. I don't remember what day I filed it on, but this is right about that time, April, May, because I was on vacation in May and it may have been middle of May when I came back and that they were still using white males, yes.
>
> Q. So you believe when you returned from vacation the middle of May you noticed that they were using white males in the 204B position?
>
> A. Yes. . . .
>
> Q. Did you first communicate with the EEO office in July and then actually fill out this form in August?
>
> A. Yeah . . . .

*Id.* at pp. 90-91.

In *McFarland*, the plaintiff brought suit against the Postmaster General alleging that she was constructively discharged from her employment as the result of sex discrimination in violation of Title VII. *McFarland*, 307 F.3d at 404. Subsequently, the district court granted the USPS a summary judgment on the ground that McFarland had failed to contact the EEOC within 45 days of the alleged acts of discrimination as required by 29 C.F.R. § 1614.105(a)(1). *Id.* at 405-06.

On appeal, the Sixth Circuit reversed the district court's grant of summary judgment. Relying on the Supreme Court's decision in *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, ___, 122 S. Ct. 2061, 2073, 153 L.Ed.2d 106 (2002), the Sixth Circuit held that McFarland's EEOC grievance was timely filed because it was based upon a claim of a hostile work environment which by its very nature involves repeated conduct. *McFarland*, 307 F.3d at 408.

Furthermore, in *Kinamore v. EPB Elec. Utility*, 92 Fed. Appx. 197 (6th Cir. Feb. 9, 2004), the Sixth Circuit discussed the impact of the Morgan decision stating:

> In *National R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002), which was decided after the district court's decision, the Supreme Court altered this doctrine. In the context of

> traditional employment discrimination claims, such a retaliation claim like this one, it observed that an employment "practice" has been interpreted "to apply to a discrete act or occurrence, even when it has a connection to other acts." *Id.* at 111. "Discrete discriminatory acts" the Court continued, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. As a result, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. By contrast, the Court reasoned "hostile work environment claims are different in kind from discrete acts. Their nature involves repeated conduct." *Id.* at 115. Such a claim involves an "'[u]nlawful employment practice' . . . [that] cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.*

Kinamore, 92 Fed. Appx. At 206.

Thus, the Sixth Circuit stated that in light of *Morgan*, the two–part inquiry for showing a continuing violation applies only to hostile work environment claims. *Id.* (citing *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003)).

In this instance, Patten has not alleged a hostile work environment. Rather, he has alleged a discrete act; namely, the failure to employ him as an acting supervisor or 204b after April 27, 2001. In his August 2, 2001 information, Patten indicated that he was not employed as an acting supervisor or 204b after April 27, 2001 [Doc. No. 11-2]. In his deposition, Patten also testified that at least by the middle of May he was aware that white males were being used in the acting supervisor or 204b position at the Shallowford Road facility [Doc. No. pp. 90-91.

However, Patten also admitted that he did not communicate his claims to the USPS EEO office until July 16, 2001, when he first requested a appointment with a Dispute Resolution specialist. *Id.* That date, July 16, 2001, is more than 45 days after April 27, 2001 and it is more than 45 days after mid-May 2001. Thus, the Court finds that there is no genuine issue of material

fact and as a matter of law Patten has failed to comply with the time requirements in 29 C.F.R. § 1614.105. Moreover, the fact that Patten alleges that he was continuously available to serve as an acting supervisor or 204b does not create a genuine issue of material fact, because it does not convert his claims of race and age discrimination into a claim of a hostile work environment or constructive discharge based upon a hostile work environment.

Finally, Patten's attempt to portray the USPS's failure to utilized him as a 204b or acting supervisor after April 27, 2001, as a continuing violation is insufficient to prevent the allegations in his complaint from being time barred under 29 C.F.R. § 1614.105(a)(1). In his complaint, Patten has alleged only a singe discrete action – the failure to utilize him as an acting supervisor or 204b as of April 27, 2001. The failure to utilize Patten as a 204b or acting supervisor was a discrete act, which by Patten's own admission he became aware of on or about April 27, 2001, when his access code did not work on the computer which he used to perform his duties as a 204b [Doc. No. 1, ¶ 2]. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' *Morgan*, 536 U.S. at 110, 122 S. Ct. 2547. Further, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114, 122 S. Ct. 2547.

Thus, the Court concludes that the USPS decision to cease utilizing Patten as a 204b or acting supervisor, which occurred on or before April 27, 2001, constitutes a single adverse employment decision not a continuing violation. Taking Patten's argument that the failure to utilize him as a 204b after April 27, 2001 constituted a continuing violation to its most logical extreme, would simply obviate the requirement of exhaustion of administrative remedies requirement as a

precondition for federal sector employees to bring suit under Title VII. If every day after a federal sector employer made an adverse employment decision constituted a "continuing" violation, the 45-day period of 29 C.F.R. § 1614.105(a)(1) for an aggrieved federal employee to initiate contact with an EEO Counsel would never run because it would always be equitably tolled.

Accordingly, Potter's motion for a summary judgment [Doc. No. 11-1] as to Patten's claims of race and age discrimination will be **GRANTED**.

A separate judgment will enter.

　　　　　　　　　　　　　　　　　　 */s/ R. Allan Edgar*
　　　　　　　　　　　　　　　　　　R. ALLAN EDGAR
　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE